Case 16—INDICTMENT—March 24.

# Burdette v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. When a defendant in a criminal prosecution voluntarily becomes a witness in his own behalf he is to be treated as any other witness, and his testimony subjected to the same test by cross-examination, impeachment or otherwise, as is the testimony of any other person called as a witness.

2. Same.—While a witness can not be compelled to answer any question that would tend to expose him to any kind of punishment or to a criminal charge, he may, for the purpose of impairing his credibility, be cross-examined as to facts tending to disgrace or degrade him, although such facts are irrelevant and collateral to the main issue.

GEO. C. WEBB for appellant.

The defendant in a criminal case, when he testifies in his own behalf, should not be cross-examined as to prior acts of misconduct. (Gale v. The People, 26 Mich., 160; The State v. Saunders, 14 Oregon, 312; State v. Lurch, 12 Oregon, 102; State v. Huff, 11 Nev., 28; Gifford v. The People, 87 Ill., 214; Farley v. The State, 57 Ind., 334; Fletcher v. The State, 49 Ind., 132; The People v. Thomas, 9 Mich., 314; Clarke v. State, 78 Ala., 480; Gargill v. Commonwealth, 12 Ky. Law Rep., 149; Cooley Con. Lim., 385; 1 Green. Ev., sec. 457.)

W. J. HENDRICK, ATTORNEY-GENERAL, R. REID ROGERS for appellee.

1. Is section 597 of the Civil Code applicable to criminal cases? (Champ. v. Commonwealth, 2 Met., 22; Black v. Commonwealth, 14 Bush, 184; Linney v. Commonwealth, 80 Ky., 571; Crittenden v. Commonwealth, 82 Ky., 167; Commonwealth v. Minor, 11 Ky. Law Rep., 776.)

2. As to the right of the Commonwealth to cross-examine the defendant as a witness as to particular acts tending to disgrace or degrade him, assuming that section 597 of the Civil Code does not apply, see Greenleaf on Evidence, vol. 1, sec. 461; Roscoe, vol. 1, 156, 166; Starkie, 10th ed., p. 238; Best's Principles of Evidence, p. 633; Wharton's Crim. Ev., sec. 474; 50 Cal., 284; People v. Rodrigo, 69 Cal., 601; Gerty v. Fitch, 137 Mass., 79; Lights v. The State, 21 Texas App., 308; Real v. People, 42 N. Y., 270; State v. Loebe, 93 Mo., 106; State v. Taylor, 98 Mo., 244; State v. Pfefferle, 36 Kan., 92; Hart v. Reed, 1 B. M., 170; Taylor v. Commonwealth, 3 Bush, 311; Thurman v. Virgin, &c., 18 B. M., 792; Young v. Commonwealth, 6 Bush, 317; McDonald v. Commonwealth, 86 Ky., 13; White v. Commonwealth,

Burdette v. Commonwealth.

80 Ky., 487; Allen v. State, 73 Am. Dec., 77; Lockard v. Common-
wealth, 87 Ky., 201.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The only ground relied on for reversal of judgment
against appellant, indicted and convicted for the crime of
larceny, is, that the Commonwealth's Attorney was per-
mitted to ask, and he was required to answer, the follow-
ing questions on cross-examination of himself as a witness
in his own behalf:

1. Whether he had ever before been convicted of steal-
ing.

2. Whether he had been arrested for breaking into a
house and stealing coffee and sent to the work-house
therefor.

It has been settled by this court that when a defendant
in a criminal prosecution voluntarily becomes a witness
in his own behalf, he is to be treated in the same way as
any other witness, and his testimony subjected to the
same test by cross-examination, impeachment or other-
wise, as is the testimony of another called as a witness.

It is, however, a rule without exception, that a witness
can not be compelled to answer any question that would
tend to expose him to any kind of punishment, or to a
criminal charge.   But whether a witness can be com-
pelled to make answer to a question having a *direct
tendency to degrade his character* seems, according to
Greenleaf on Evidence, section 454, volume 1, not to
have been perfectly settled by authority.   Though in
section 456 it is said to be " generally conceded that
when the answer which the witness may give will *not
directly and certainly show his infamy, but will only tend*
to disgrace him, he may be compelled to answer."   It

seems to us, however, that whether looking to the rights and interest of the witness, or ascertainment of truth, he would be less likely to suffer injustice or injury, and his credibility more certainly determined, by showing the existing fact of his infamy, than by clouding his character with suspicion, probably unfounded.

In the same section it is said, there does not seem to be any good reason why a witness should be privileged from answering a question touching his present situation, employment and associates, if they are of his own choice; as for example, in what house or family he resides; what is his ordinary occupation, and whether he is intimately acquainted and conversant with certain persons and the like; for although these may disgrace him, his position is one of his own seeking.

And, in section 459 it is said, that when the inquiry relates to transactions comparatively recent, bearing directly upon the present character and moral principles of the witness, and, therefore, essential to the due estimation of his testimony by the jury, learned judges have of late been disposed to allow it.   Nevertheless, the proposition is stated in section 457, without qualification, that when the question involves the fact of a previous conviction, it ought not to be asked.   But the only reason given in that connection for the rule is, that there is higher and better evidence of such fact that ought to be offered, which reason, it seems to us, is rather technical than substantial; for certainly previous conviction for a crime could not be more safely and satisfactorily shown by record evidence than by admission of the person himself, who was convicted.   In fact, there is no more reason for excluding a question to a witness on cross-examination,

answer to which would show his previous conviction of crime, than interrogation of him in reference to any other past transaction of an infamous or degrading character. After all, the object of testimony is to elicit the whole truth as to an issue involved, and every reasonable test should be applied that will enable the jury to fix a proper estimate upon the credit of a witness, and it should be applied as well to a defendant, in a criminal prosecution, who voluntarily testifies in his own behalf, as another person; otherwise, in many cases there would be undue credence given to testimony not entitled to credit.

Our Constitution provides that a person can not be compelled to give evidence against himself, but that applies to a pending prosecution, or to evidence that might expose him to punishment or to a criminal charge; and manifestly, neither the law nor public policy requires any other restriction in the application of necessary tests of the credibility of a witness or truthfulness of his testimony. And such is the present tendency of decisions on the subject, for Wharton says: "In this country there has been some hesitation in permitting a question, the answer to which not merely implies disgrace but touches on matters of record; but the tendency now is, if the question be asked for the purpose of honestly discrediting a witness, to require an answer." (Wharton's Crim. Ev., sec. 474.)

In the State of Kansas v. Pfefferle, 36 Kan., 90, the question involved in this case was well considered, and the conclusion arrived at that, according to tendency of modern authorities extensively cited, as well as upon principle, for the purpose of impairing his credibility, a witness may be cross-examined as to specific facts

tending to disgrace or degrade him, although such facts are irrelevant and collateral to the main issue. And we see no good reason whatever why such test may not, in a proper and pertinent manner and under control of the court, be applied.

Judgment affirmed.