# Welch v. Commonwealth.

110  105
f114 374

110  105
e123 416

PETITION FOR REHEARING DENIED.   (FOR FORMER REPORT SEE 60 S. W., 185.)

IMPEACHMENT OF WITNESS—EVIDENCE OF PARTICULAR WRONGFUL ACTS.

Held:    Under Civil Code Practice, section 597, which applies to criminal as well as civil cases, providing that a witness may be impeached "by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of a felony,"—it was error to permit the Commonwealth to impeach a witness for defendant by proving by an officer that he had a warrant for the arrest of the witness, and then allowing the prosecuting attorney to read the warrant to the jury.

CHIEF JUSTICE PAYNTER AND JUDGES WHITE AND HOBSON DISSENTING.   SEE DISSENTING OPINION OF JUDGE HOBSON, 60 S. W., 1118.

R. T. PEAK, COMMONWEALTH'S ATTORNEY,. AND R. J. BRECKIN-
RIDGE, ATTORNEY-GENERAL FOR THE COMMONWEALTH.

The court seems to base its opinion in the reversal of the case at
bar, upon the case of Leslie v. Com., 19 Rep., 1202, and Lewis
v. Com., 19 Rep., 1139. Neither of said cases is marked to be
reported as official cases, but are marked not to be reported.   It
seems to us that the rule laid down in the case at bar, and the
two cases above cited, is in direct conflict with the case of Bur-
dette v. Commonwealth.   We have understood the rule to be,
that reported cases are the ones for the guidance and govern-
ment of trial courts, and if the law is improperly stated with
reference to the admission of evidence in Burdette v. Common-
wealth, the same should be overruled.

The case of Ellis v. Commonwealth, 19 Ky. Law Rep., is not, in our
opinion, a case similar to the one at bar, for in that case the
witness testified in person, and the attorney for the Common-
wealth, had the opportunity to ask her concerning the charge
against her, and failing to do so, the court permitted the Cir-
cuit Clerk to testify about the charge pending against her as
accessory to the crime which the defendant was being tried for.

RESPONSE OF THE COURT BY JUDGE GUFFY DENYING A REHEARING.

The appellee in this case, in the petition for rehearing,
says the evidence, the admission of which was held in
the opinion herein to be a reversible error, was admitted
under and by authority of the opinion in Burdette v. Com.,
93 Ky., 76, 18 S. W., 1011.   It will be seen, however, from
that case, that the questions asked and required to be
answered were:   First, whether he, being the defendant
then testifying, had ever been convicted of stealing; sec-
ond, whether he had been arrested for breaking into a
house and stealing coffee, and, sent to the workhouse
therefor.   This court held that it was not error to require
the defendant to answer the questions; saying, in sub-
stance, that when the defendant voluntarily became a wit-
ness in his own behalf he should be treated in the same
way as any other witness, and his testimony be subjected
to the same test, by cross-examination, impeachment, or
otherwise, as is the testimony of another called as a wit-

ness.   The court further said:  "It is, however, a rule
without exception that a witness can not be compelled to
answer any question that would tend to expose him to any
kind of punishment or to a criminal charge.   But whether
a witness can be compelled to make answer to a question
having a direct tendency to degrade his character seems,
according to 1 Greenl. Ev., section 454, not to have been
perfectly settled by authority, though in section 456 it is
said to be 'generally conceded that when the answer which
the witness may give will not directly and certainly show
his infamy, but will only tend to disgrace him, he may
be compelled to answer.'   It seems to us, however, that
whether looking to the rights and interests of the wit-
ness, or ascertainment of truth, he would be less likely
to suffer injustice or injury, and his credibility more cer-
tainly determined, by showing the existing fact of his
infamy, than by clouding his character with suspicion
probably unfounded.   In the same section it is said there
does not seem to be any good reason why a witness should
be privileged from answering a question touching his
present situation, employment and associates, if they are
of his own choice, as, for example, in what house or fam-
ily he resides, what is his ordinary occupation, and wheth-
er he is intimately acquainted and conversant with cer-
tain persons, and the like; for, although these may dis-
grace him, his position is one of his own seeking. . . ."
It will be seen from the foregoing that the court was
speaking of undisputed and accomplished facts of which
a witness has been duly convicted, or of disreputable as-
sociations of his own choosing, none of which are at all
analogous to the question involved in this case.   More-
over, section 597 of the Civil Code of Practice seems not
to have been considered or discussed in the opinion under

consideration. The section provides how a witness may be impeached, which is by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief, but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness or record of a judgment that he has been convicted of felony. The warrant read as evidence in this case was in fact no evidence that the witness had been gutily of any crime at all, nor of any act or transaction of his life. It does not even show that any party had ever made affidavit even charging him with any crime. But even if the affidavit required by law to be filed, or knowledge of the officer issuing the writ, had been embraced therein, it would have not tended to make the warrant competent evidence. If a witness may be impeached, and the litigant thereby be deprived of the benefit of his testimony, by simply showing that some one had accused him of some crime, great or small, thousands of the best citizens would be subject to impeachment; and a trial or prosecution would often be the medium through and by which slanderous reports against worthy citizens might be published. It was expressly said in the case of Lewis v. Com., 19 R., 1139; 42 S. W., 1128: "A witness can not be impeached by proving particular acts or offenses that he might have been guilty of, but the inquiry must be confined to general character, and not to particular acts charged against the witness." In Leslie v. Com. (decided Nov. 5, 1897), 19 R., 1201; 42 S. W., 1096, this court, after discussing the case of Burdette v. Com., said: "But the Commonwealth was permitted, against objections, to ask appellant if he had not been arrested and fined for carrying concealed weapons, and if he had

Welch v. Commonwealth.

not been arrested for discharging firearms in Tompkins-
ville. We are inclined to the opinion that this was preju-
dicial error. The general rule is that the fact that a wit-
ness is under indictment may not be proved for the pur-
pose of impeaching him. Neither is evidence of his arrest
upon a criminal charge admissible for that purpose." If
the witness had been tried and convicted of the offense
charged in the warrant in question, it would have been
competent, under the Code, to have proved that fact.
This court, in the case of Pennington v. Com., 51 S. W.,
818, decided that a witness could not be required to an-
swer as to indictments against him or conviction for mis-
demeanor. We quote as follows from the opinion in the
case, *supra:* "On the trial the following extract of the
cross-examination of appellant is taken from the bill of
evidence, to all of which evidence appellant objected.
'Q. Were you indicted for anything since then? A. Yes,
sir. Q. What was it? A. I was charged with killing a hog.
Q. Were you convicted on the charge? A. Yes, sir. Q.
Well, go on. Were you indicted for anything else? A.
I was indicted here for taking a gun under false pretenses.
Q. Were you indicted for anything in any other county?
A. I was indicted once at Salyersville, Ky., for carrying
concealed a pistol. I was tried and fined. Q. Were you
ever convicted and sent to the penitentiary in any other
State? A. No, sir.' Then follow a number of questions
as to whether the accused had ever been indicted in the
counties of Knott, Pike, Martin, Breathitt, Perry and Bell;
the witness answering in the negative to each question.
Our statute provides (section 597, Civ. Code Prac.) that a
witness may not be impeached by 'evidence of particular
wrongful acts, except that it may be shown by the exam-
ination of a witness or record of a judgment that he has

been convicted of felony.' It follows that the evidence quoted was incompetent, and from its nature it was presumably prejudicial. Such have been the repeated rulings of this and other courts. Baker v. Com. (Ky.), 50 S. W., 54; Martin v. Com., 93 Ky., 193, (19 S. W., 580); Leslie v. Com. (Ky.), 42 S. W., 1095; Saylor v. Com. (Ky.), 30 S. W., 390; 2 Rob. Ky. Cr. Law & Proc., section 979; Commander v. State, 60 Ala., 1; Pinckord v. State, 13 Tex. App., 478." The question under consideration is discussed at length in 1 Greenl. Ev. (Lewis' 1896 Ed.), c. 3. It is said in section 454 that: "Where the answer, though it will not expose the witness to any criminal prosecution or penalty, or to any forfeiture of estate, yet has a direct tendency to degrade his character. On this point there has been a great diversity of opinion, and the law still remains not perfectly settled by authorities. . . ." At the close of section 459 the learned writer says: "The great question, however, whether a witness may not be bound in some cases to answer an interrogatory to his own moral degradation, where, though collateral to the main issue, it is relevant to his character for veracity, has not yet been brought into direct and solemn judgment, and must therefore be regarded as an open question, notwithstanding the practice of eminent judges at *nisi prius* in favor of the inquiry under the limitation we have above stated." It may be conceded that some courts of last resort in some of the States hold that a witness may be required to answer as to infamous charges having been made against, or as to crimes theretofore committed by, him, or of which he may have been convicted. But we think that the reason of the law, as well as the later authorities, sustains the doctrine announced in the opinion of this court heretofore referred to in support of the opin-

ion herein. It is not unreasonable to conclude that the pro-
vision of the Code heretofore quoted was enacted for the
purpose of putting the question under consideration at
rest in this State. The section, *supra*, was not discussed
or referred to in the cases of Mitchell v. Com. (Ky.), 14
S. W., 489, Roberts v. Com. (Ky.), 20 S. W., 267, nor in
Burdette v. Com., 93 Ky., 76, (18 S. W., 1011), relied on by
appellee. The doctrine announced in the three above-
named cases has been, in effect, overruled time and again
by decisions of this court announcing a contrary rule.
We are of opinion that under the provision of the Code,
*supra*, a witness can not be required to answer any ques-
tion the answer to which would tend to show that he had
been guilty of any misdemeanor, or had been accused of
any crime, indicted for any crime, or convicted of any
misdemeanor, and that no such facts can be proved of and
concerning a witness by other witnesses. So far as the
opinions in the three last-named cases are in conflict with
this opinion, they are hereby expressly overruled. Also,
see Smith v. Fisher, 5 J. J. Marsh., 189. Petition over-
ruled.

Chief Justice Paynter and Judges Hobson and White
dissent from this response, but agree that the petition
should be overruled.

DISSENTING OPINION BY JUDGE HOBSON.

Parker v. Com. (Ky.) 51 S. W., 573, and Pennington v.
Com. (Ky.) 51 S. W., 818, were not intended to conflict
with the well-settled rule in this State, or the general
current of authority elsewhere. The court, after showing
that the evidence was not competent as cross-examina-
tion, went on to show that it was also incompetent, under
the statute, for the purpose of impeachment; it having been
previously held that such evidence might be obtained from

the witness himself, as well as other witnesses. This is all there is in the quotations made from those opinions. Neither was marked for publication, or understood by the court to state anything new. In every opinion of this court decided before this case, the authority of the cases now overruled was tacitly, if not expressly, recognized, and nowhere more clearly than in the opinion by Judge DuRelle in Warren v. Com. 99 Ky., 370, 35 S. W., 1028, and Leslie v. Com., 42 S. W., 1095. If six accomplices of the defendant have testified for the Commonwealth on the trial of this case or six informers or spies, and the court had limited their cross-examination by the rules now announced by this court, the defendant, in my judgment, would have much more substantial ground of complaint than anything that now appears, in this record.