PEOPLE v. TRAVIS.

Rape—Evidence—Cross-Examination.

In the prosecution of a married man for statutory rape on his
adopted daughter, requiring defendant, on cross-examination,
to testify that he had not slept with his wife for four years,
and reference thereto by the prosecutor in his argument to the
jury, on the theory that defendant had not had sexual inter-
course with his wife for a considerable time and therefore
would be more inclined to commit rape than one whose sexual
desires had been regularly satisfied, was reversible error.

Error to Allegan; Cross (Orien S.), J. Submitted
January 14, 1929. (Docket No. 149, Calendar No.
33,803.) Decided March 29, 1929.

A. L. Travis was convicted of statutory rape. Re-
versed, and new trial granted.

*Clare E. Hoffman* and *Leo W. Hoffman,* for ap-
pellant.

*Wilber M. Brucker,* Attorney General, and *Harry
Pell,* Prosecuting Attorney, for the people.

McDonald, J. The defendant seeks to review by
writ of error his conviction on a charge of statutory
rape upon Vivian Travis, an adopted daughter.
The offense is alleged to have taken place on De-
cember 4, 1926, at defendant's home in the county of
Allegan, Michigan. It is claimed by the people that
he began having sexual intercourse with Vivian
when she was 13 years of age, and that this rela-
tion continued for two years and until the commis-
sion of the act charged in the information in this
case. While the act was charged as of December 4,
1926, the prosecutrix, in her testimony, was not able
to fix it more definitely than some time during the
last of November or the fore part of December. She
testified that on the evening in question when his

wife and other members of the family were away from home, the defendant came upstairs to her bedroom and there had sexual intercourse with her.

The defendant made a complete denial of the charge, and offered testimony from numerous members of his family to the effect that they were home during the latter part of November and the first part of December, and that the defendant could not have gone to Vivian's room without their knowledge.

Error is assigned on the ruling of the court in requiring the defendant to answer questions as to his sexual relations with his wife. The defendant was called as a witness. On cross-examination, the prosecuting attorney interrogated him as follows:

"*Q.* How long is it since you and your wife have cohabited together, as husband and wife?

"*Mr. Hoffman:* Wait a minute. I object to it as incompetent and immaterial and privileged.

"*The Court:* I think he may answer.

"*A.* What do you mean by that?

"*Q.* Well, do you sleep together?"

Again Mr. Hoffman objected.

"*The Court:* It should be confined to before the time of the arrest.

"*Q.* Well, before you were arrested, did you and your wife sleep together?

"*Mr. Hoffman:* The same objection, if the court please.

"*The Court:* He may answer.

"*Mr. Hoffman:* May it be understood all testimony of that kind is under my objection?

"*The Court:* It may be.

"*A.* Why, we didn't sleep together. She slept in her room and I slept in mine. Only once, we were crowded and had a lot of people there, then she slept in—

"*Q.* How long have you slept in separate rooms?

"*A.* Well, I think it has been about four years.

"*Q.* Four years before this?

"*A.* About four years; well, it is four, because [we] went to the ranch; after we came back from the ranch, she left me and had to sleep with Vivian for one year pretty nearly.

"*Q.* During that time, you haven't cohabited with your wife at all, have you?

"*Mr. Hoffman:* I object to that question, the same reason I did before.

"*The Court:* He may answer.

"*A.* I certainly have."

In admitting this testimony and limiting it to a time prior to the arrest, the jury was given to understand that a man who had not had sexual intercourse for a considerable period of time would be more inclined to commit rape than one whose sexual desires had been regularly satisfied. It was on this theory that the prosecuting attorney brought out the testimony and apparently on this theory the court admitted it as evidence which the jury might weigh against the defendant in determining his guilt. The prejudicial effect of this testimony would more plainly appear in the case of an unmarried defendant called upon to answer a charge of rape. His virtue and continence would be used against him. The jury was required to determine the truth of the story told by the girl or that related by the defendant. Against the probability of the truth of the defendant's story, which was a complete denial of the charge, they were allowed to consider the fact that he had not had sexual intercourse with his wife for four years. The harmful effect of this testimony was emphasized by the prosecuting attorney in again referring to it in his argument to the jury. For this error the judgment should be reversed.

"We have many times alluded to the care with which this class of cases should be tried. The direct

testimony is usually, as here, confined to the charge of the little girl and the denial of the defendant. Juries, as a rule, seem prone to accept the story told by the girl as sufficient to convince them of the guilt of the defendant beyond a reasonable doubt." *People* v. *Keller,* 227 Mich. 520.

Many of the other assignments present questions which on this record involve harmless error. As they are not likely to arise on a retrial, we do not deem it necessary to discuss them.

The judgment of conviction is reversed, and a new trial granted.

FEAD, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred. NORTH, C. J., and POTTER, J., did not sit.