**Ralph HAYTON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 19, 1960.

Francis M. Burke, Pikeville, for appellant.

Jo M. Ferguson, Atty. Gen., Earle V. Powell, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

The appeal by Ralph Hayton is from conviction of rape.

The Commonwealth proved that on a night in September, 1958, the defendant had been visiting several taverns and, having seen the husband of Mrs. Frances Edwards at one of the places, he, with his friend Tom

Isom, drove to the village of McCarr, where Edwards lived. He left his car about a hundred yards from the residence and about midnight entered the house through a window and raped Mrs. Edwards. She testified she was awakened and Hayton was standing at the foot of her bed. She began screaming, and he put a pillow over her face and struck her several times, tore her clothing and ravished her. He threatened to kill her and her husband if she told anybody. When he had gone, the prosecutrix immediately opened a window and called to her mother-in-law, who lived next door, to come to her. She and her husband went to Mrs. Edwards at once, and another neighbor hearing the children crying and the commotion, also went there. They found Mrs. Edwards hysterical. She had several bruises on her face and throat and her clothing was torn. Other witnesses testified as to her wounds. Isom testified that Hayton returned running to his car.

The defendant, who was 27 years old, testified he lived with his mother at North Matewan, West Virginia, which is a short distance from Tug River, the boundary between Kentucky and West Virginia. He had known Edwards and his wife for about ten years and was frequently in their home. He testified that on this night Mrs. Edwards admitted him into the house and freely consented to the act of intercourse as she had been doing for a year and a half.

The appellant contends it was prejudicial error of the court to admit the following interrogation over his objection:

"Q. Are you married or single? A. Married.

"Q. How many children have you got? A. Five.

"Q. Where are they? A. In Arizona."

The appellant argues that evidence that he was a married man with a family with whom he was not living was irrelevant and could serve only the purpose of inflaming the jury against him. In support he cites Johnson v. State of Texas, 164 Tex.Cr.R. 204, 298 S.W.2d 132, 62 A.L.R.2d 1064; People v. Travis, 246 Mich. 514, 224 N.W. 329; State v. Dorton, 125 W.Va. 381, 24 S.E.2d 455. Two other foreign cases cited do not seem to be in point. The case of Hurst v. Commonwealth, 212 Ky. 39, 278 S.W. 166, involved evidence of a different character.

The Commonwealth relies upon McCreary v. Commonwealth, 158 Ky. 612, 165 S.W. 981, in which this court held in a prosecution for carnal knowledge of a female under sixteen that evidence that the defendant's wife was a paralytic and an invalid was admissible as tending to show motive.

We need not decide the question of whether or not the evidence was admissible upon the ground of motive. It was admissible, we think, upon another ground.

■ When a defendant in a criminal prosecution takes the stand as a witness in his own behalf, he may be cross-examined as fully and freely as any other witness. Gentry v. Commonwealth, 215 Ky. 728, 286 S.W. 1040; Fox v. Commonwealth, 299 Ky. 293, 185 S.W.2d 394. It was written in Grigsby v. Commonwealth, 299 Ky. 721, 187 S.W.2d 259, 262, 159 A.L.R. 196, "By taking the witness stand, a defendant must submit to a searching cross-examination upon subjects or phases thereof introduced in his direct examination if they raise an inference unfavorable to the prosecution, or to examination upon incidental or collateral and apparently irrelevant matters which are calculated to test the credibility and the weight of his testimony. Of such character are questions concerning his movements or conduct prior to the commission of the crime with which he is charged, as to his residence, associates, and business or employment, and in some instances as to some immoral conduct in his past life. Burdette v. Commonwealth, 93 Ky. 76, 18 S.W. 1011; Leslie v. Commonwealth, 42 S.W. 1095, 19 Ky.Law Rep. 1201. Even broader is the legitimacy of such inquiries if the accused

on direct examination voluntarily opened up the matter." See also Annotation, Right to cross-examine witness as to his place of residence, 37 A.L.R.2d 737; 98 C.J.S. Witnesses §§ 344, 485(7).

■ The defendant had testified on direct examination, as stated above, he lived at a place in West Virginia, and thereby opened up the question relating to his residence and any other pertinent preliminary personal status. We hold that the interrogation was competent on this ground.

■ After the defendant's arrest, he was interrogated at the office of the Commonwealth's Attorney in the presence of a justice of the peace and his statements were recorded. On his cross-examination the defendant was asked about some of those statements which were different from his testimony. The trial court, in chambers, inquired into the circumstances of the statements and ruled they were voluntarily made and did not come under the ban of KRS 422.110, relating to confessions or information obtained through threats or other wrongful means. In any event, the statements were not introduced as confessions or admissions of guilt but were used for impeachment of the defendant as a witness as authorized by Civil Rule 43.07, formerly Civil Code, § 597, which was always held applicable in criminal cases.

■ In his argument the prosecuting attorney charged that the defendant had told "three different tales" and that "he has got a wife and five children in Arizona and he has been living over here with his mother five, six or seven years; a man out here raping men's wives." The first and third clauses of the statement—as are some other bits of argument complained of—cannot be regarded as improper. The reference to the defendant's residence and family was to evidence which we hold was competent. If the jury caught the implication, it is apparent that it was not inflamed thereby; for the jury fixed the defendant's punishment at the minimum of ten years' im-

prisonment, whereas the jury would have been justified in imposing a greater punishment of life imprisonment or life imprisonment without right of parole or death.

The judgment is affirmed.